## In re SAFADY BROS.

### In re SAFADY BROS. & SARTELL.

(District Court, W. D. Wisconsin. December 27, 1915.)

1. STATUTES ⊚⟶184—CONSTRUCTION—EFFECTUATING GENERAL PURPOSE.

If, on applying the Uniform Partnership Act to the varying rules found in different states, obscurity in language appears, the meaning of doubtful parts should, if possible, be gathered from its general purpose, as shown by its language; and when this general purpose is found, and is plain and unmistakable, particular words may be ignored, if out of harmony with the general purpose, unless they were used by way of proviso or exception, or. indicate a positive intent inconsistent with the general spirit.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 262; Dec. Dig. ⊚⟶184.]

2. EXEMPTIONS ⊚⟶61—PERSONS ENTITLED—MEMBERS OF PARTNERSHIP—"AT-TACH"—"ATTACHMENT PROCEEDINGS"—"PARTNER'S INTEREST IN THE PART-NERSHIP."

Uniform Partnership Act (Laws Wis. 1915, c. 358) § 1724m21, provides that the property rights of a partner are his rights in specific partnership property, his interest in the partnership, and his right to participate in the management; that the partners are co-owners of specific partnership property, holding as tenants in partnership; that a partner has an equal right with his partners to possess such property for partnership purposes, but not for other purposes; that his right in such property is not assignable, or subject to attachment or execution, except on a claim against the partnership; that, when partnership property is "attached" for a partnership debt, the partners cannot claim any right under homestead or exemption laws; that a surviving partner has no right to possess the partnership property for any but a partnership purpose; and that a partner's right therein is not subject to dower, etc. Section 1724m24, dealing with the claims of individual creditors, provides that nothing therein shall deprive a partner of his right under exemption laws as regards his interest in the partnership; and section 1724m22 defines a "partner's interest in the partnership" as his share of the profits and surplus. *Held*, that a partner no longer has the right to an exemption out of the partnership's stock in trade in case of its seizure on execution or attachment, or any other mesne or final process, as prior to that act, since, while "attachment proceedings" indicate a seizure on mesne process, the verb "attach" has a broad meaning, and indicates any seizure of property for the purpose of bringing it within the custody of the court, and there is nothing in the act requiring the word to be taken in the restricted meaning of seizure on mesne process.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 83–87; Dec. Dig. ⊚⟶61.

For other definitions, see Words and Phrases, First and Second Series, Attach; Attachment; Partner's Interest.]

In Bankruptcy. In the matter of Safady Bros. and Safady Bros. & Sartell, bankrupts. On review of orders of the referee. Findings and orders of the referee affirmed.

W. H. Dougherty and John Cunningham, both of Janesville, Wis., for bankrupts.

L. A. Avery and M. P. Richardson, both of Janesville, Wis., for trustees and creditors.

SANBORN, District Judge. The question of exemptions in these cases has been referred to the court by the referee. Both firms petitioned for voluntary bankruptcy July 23, 1915, each partner claiming $200 exemptions in each firm. Shortly before a partnership execution had been levied against Safady Bros. & Sartell. It was found on the hearing of the matter that the two stores carried on by the two partnerships constituted the same business, so far as the Safadys were concerned, and they are therefore only entitled, at the most, to one exemption each, and Sartell to one also. The important question concerns the effect to be given to the Uniform Partnership Act, adopted by the Wisconsin Legislature July 8, 1915, as chapter 358, Laws of 1915.

By the Wisconsin law in force before the latter date each merchant or trader belonging to a partnership, in case of a seizure of the property on execution or attachment, or any other mesne or final process, was entitled to a $200 exemption out of the partnership stock in trade. Section 2982, Wisconsin Statutes; O'Gorman v. Fink, 57 Wis. 649, 15 N. W. 771, 46 Am. Rep. 58. Under this statute it was the duty of the trustee to set off the exemption to each partner. In re Friederick (D. C.) 95 Fed. 282; In re Friedrich, 100 Fed. 284, 40 C. C. A. 378. Whether this exemption has been taken away by the Uniform Partnership Act is now the question to be decided. From the words used it is argued that the Legislature intended to take away the individual partners' exemptions only where the firm property was seized on attachment, a comparatively infrequent occurrence, leaving the earlier statute to govern all other situations, including execution, supplementary proceedings, creditors' suits, bankruptcy, and assignments for creditors. An examination of the provisions of the act is therefore necessary, in order to determine what construction should be given it, as a whole. The particular section (1724m21) referring to exemptions provides that, where partnership property is *attached* for a partnership debt, the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

The Uniform Partnership Act was under consideration by the Conference of Commissioners on Uniform State Laws from 1902 to 1912 or 1913, and the first state to adopt it was Pennsylvania, in 1914. A number of explanatory articles have recently appeared in the law magazines, including a criticism by Judson A. Crane, of the Harvard Law School, 28 Harvard Law Review, 762, and Mr. Lewis' answer, in current numbers of the same publication. It was drawn by William Draper Lewis for the Conference, based on the incomplete work

of the late James Barr Ames, Dean of the Harvard Law School, and on the English Partnership Act, drawn by Sir Frederick Pollock. It is an attempt to codify the existing common law on the subject, rather than to change that system; but where the rules are conflicting it chooses the one supposed to be the better.

[1] Since the Bankruptcy Act (Act July 1, 1898, c. 541, § 6, 30 Stat. 548 [Comp. St. 1913, § 9590]) adopts the state laws on the subject of exemptions, and as the recent act has not yet been construed by the Wisconsin court, the courts of bankruptcy must apply it for themselves. It was drawn to secure as far as possible uniformity among the states as to the substantive law of partnership, how formed, how changed during its existence, and how dissolved, the precise legal relation between partner and partner, partner and firm, firm and creditor, partner and creditors (firm and individual), marshaling assets between creditors and between partners, legal relation of outgoing and incoming members and the rights and liabilities of the estates of deceased or bankrupt members. All such relations are most carefully worked out, and described in terse, clear language, without repetition or amplification. It is evident from the text, as well as the history of the subject, that the bill was drawn with the utmost care and pains, not only to reach an important general result, but with fit details strictly combined, so as to present a harmonious and consistent whole. Construction should not be overcritical. If, on applying the act to the varying rules found in different states, obscurity in language should appear, as will undoubtedly be the case, the meaning of doubtful parts should, if possible, be gathered from its general purposes. Upton v. United States, 19 Ct. Cl. 49. The general purpose of the act must be gathered from its language; when this is found, and is plain and unmistakable, particular words may be ignored, if out of harmony with the general purpose, unless they were used by way of proviso or exception, or indicate a positive intent inconsistent with the general spirit. Gardner v. Collins, 2 Pet. 92, 7 L. Ed. 347.

[2] By the former Wisconsin law a partner had no exemption in the firm property as such, because there could not be an exemption in an undivided interest or tenancy in common. West v. Ward, 26 Wis. 579. On seizure by attachment, execution, or insolvency, each partner was permitted to sever his interest and claim $200 exemption in the partnership stock. O'Gorman v. Fink, supra. The right to make such severance or division was the foundation of the exemption right. This right of severance is taken away by section 21 (original section 25) of the Uniform Partnership Act, here copied in full. It reads:

"1. The property rights of a partner are his rights in specific partnership property, his interest in the partnership, and his right to participate in the management.

"2. A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

"3. The incidents of this tenancy are such that:

"(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

"(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.

"(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

"(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

"(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin."

Section 1724m21.

The partner's interest in inalienable, and is not subject to dower or family rights. Even a surviving partner could not have any exemption, because he is not allowed "to possess the partnership property for any but a partnership purpose."

Section 24 (original 28) deals with the claims of individual judgment creditors against the individual partners, and subdivision 3 says:

"Nothing in this chapter shall be held to deprive a partner of his right, if any, under the exemption laws, as regards his interest in the partnership"

—which is defined in section 22 (28) as "his share of the profits and surplus." Thus the partner's separate interest is subject to exemption on separate debts.

It seems perfectly clear that the former right of severance in Wisconsin for the purpose of exemption cannot possibly exist under the cited provisions. Nor does subdivision "c" change this conclusion. It says that the tenancy in partnership is subject to attachment and execution on partnership claims, but when "attached" shall not be exempt. It is argued that this word means to restrict the creditor's right, and allow the exemption in cases of execution, supplementary proceedings, creditors' suits, insolvency, and bankruptcy, but this construction is out of harmony with the other parts of the statute. Nor should the language itself be given any such restricted meaning. "Attachment proceedings" indicate a seizure on mesne process. This, however, is the narrow meaning. As a verb the word "attach" has a broad, recognized meaning, and indicates any seizure of property for the purpose of bringing it within the custody of the court. This is well brought out in the case of Wilder v. Inter Island Steam Navigation Company, 211 U. S. 239, 29 Sup. Ct. 58, 53 L. Ed. 164, 15 Ann. Cas. 127, where the word was construed to extend to seizure in proceedings supplementary to execution. In using the word "attach," therefore, the drafter has not employed a word which must be given an unusual or strained meaning to carry out the intention of the act. When a word has a narrow and a broad meaning, it should be taken in the sense in which the general purpose of the act requires it to be taken. There is nothing which can fairly be said to require the word to be taken in the restricted meaning of seizure on mesne process; in

fact, to thus restrict the word is to do violence to the intention of the framers, which I think fairly appears when one takes the entire act into consideration. To give the word the narrow meaning would make the right of the partnership creditors to have the partnership property free from exemption claims depend upon the mere accident of whether such property was seized on mesne process. It can hardly be said that the Legislature intended to preserve the partnership property from exemption claims only when it was seized on preliminary process, and not when seized or attached in any other way.

Section 21 discloses the express legislative design to bring about a uniform principle and practice with respect to exemptions, and if found inconsistent with the former interpretation of exemption laws must be held amendatory. An attachment on mesne process is merely to hold the property for the later writ of execution, so, if this clause is to be construed as contended, this absurd result would follow: That there could be no exemption against provisional process, but against final process (which was to be aided and made effective by the other) the exemption claim would be good.

In view of the plan of the draftsman to use the fewest possible words, and the whole purpose and spirit of the law, the word "attach" was advisedly used to indicate the same kind of a seizure meant by "attachment or execution" in the same subdivision.

The findings and orders of the referee, disallowing all the exemptions except the homestead, should be affirmed.